UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

08 CV 02802

| | |
|---|---|
| NANETTE KATZ, On Behalf of Herself and All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>MF GLOBAL, LTD., MAN GROUP PLC, KEVIN R. DAVIS, AMY S. BUTTE, CHRISTOPHER J. SMITH, ALISON J. CARNWATH, CHRISTOPHER BATES, EDWARD L. GOLDBERG AND HENRI J. STEENKAMP,<br><br>Defendants. | **CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>**JURY TRIAL DEMANDED**<br><br>RECEIVED<br>MAR 17 2008<br>U.S.D.C. S.D. N.Y.<br>CASHIERS |

Plaintiff, Nanette Katz, on behalf of herself and all others similarly situated, by her undersigned attorneys, alleges upon personal knowledge as to herself and her own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through her attorneys, which included, among other things, a review of public documents and announcements made by the defendants, Securities and Exchange Commission ("SEC") filings, news articles and press releases regarding MF Global, Ltd. ("MF" or the "Company"), and plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.   This is a class action brought by plaintiff on behalf of herself and a Class consisting of all other persons and entities who purchased or acquired the publicly-traded common stock of MF pursuant or traceable to the Company's July 19, 2007 initial public

offering of 97,379,765 shares at $30.00 per share (the "IPO") and through February 28, 2008 (the "Class Period").  In connection with the IPO, defendants made materially false and misleading statements, or omitted to state other facts necessary to make the statements made not misleading, regarding the Company's business, risk management policies and systems.  As a result of her purchase of MF common stock, plaintiff and other members of the class suffered damages.

        2.      On February 28, 2008, before the markets opened, MF disclosed via press release that the Company was taking a $141.5 million bad debt provision after one of its brokers trading in wheat futures "substantially exceeded his authorized trading limit."  The MF broker speculated in wheat futures in his MF personal account, placing orders for about 15,000 to 20,000 futures contracts.  On this news, MF's shares closed at $21.19 a share, down $8.09 a share, on unusually high trading volume, representing a nearly 30% collapse.

        3.      Certain representations made by defendants in connection with the IPO were materially false and misleading, or omitted to state other facts necessary to make the statements made not misleading, because:  (1) the Company's risk management infrastructure including its policies, procedures and systems were deficient; (2) the Company misrepresented that clients open positions and margin levels were monitored on a real time basis with its sophisticated technical system and oversight; (3) the Company's risk management controls were suspended or eliminated to speed up certain trades; (4) the Company eliminated credit and risk analysis, buying power limits and controls which allowed an MF representative to place orders disregarding margin requirements; and (5) that, as a result of the foregoing, the Registration Statement and Prospectus were false and misleading at all relevant times.

**JURISDICTION AND VENUE**

4. The claims alleged herein arise under Sections 11, 12(a)(2) and 15 of the Securities Act of 1933 (the "Securities Act') [15 U.S.C. §§ 77k, 77l(a)(2) and 77o].

5. This Court has jurisdiction over the subject matter of this action pursuant to Section 22 of the Securities Act, [15 U.S.C. § 77v] and 28 U.S.C. § 1331.

6. Venue is proper in this District pursuant to Section 22 of the Securities Act, 15 U.S.C. 77v and 28 U.S.C. § 1391(d). Many of the acts and transactions alleged herein occurred in part in this District. MF maintains executive offices in this District.

7. In connection with the acts, transactions and conduct alleged herein, defendants, directly and indirectly, used the means and instrumentalities of interstate commerce, including the United States mails, interstate telephone communications and the facilities of the national securities exchanges.

**THE PARTIES**

8. Plaintiff, Nanette Katz, purchased MF common stock pursuant or traceable to the IPO as detailed in the attached Certification and has been damaged thereby.

9. Defendant MF, formerly Man Financial, operates as a broker of exchange-listed futures and options worldwide. MF provides execution and clearing services for exchange-traded and over-the-counter derivative products, as well as for non-derivative foreign exchange products and securities in the cash market. The Company offers trade execution and clearing services for derivative and cash products across a range of trading markets, including interest rates, equities, currencies, energy, and metals, as well as agricultural and other commodities. MF global serves approximately 130,000 active client accounts, including institutions, hedge funds, other asset managers, professional traders, and private clients. MF markets and sells its products

through three primary distribution channels, such as employee brokers, introducing brokers, and online platforms.

10.     Defendant Man Group plc ("Man") is the former parent of MF.  Man received approximately $3 billion of proceeds from the Company's IPO and retains an approximate 20% stake in MF.  Man is a controlling person of MF.

11.     Defendant Kevin R. Davis, ("Davis") was at all relevant times, the Company's Chief Executive Officer and Director.  Davis signed the materially false and misleading Registration Statement filed with the SEC in connection with the IPO.

12.     Defendant Amy S. Butte ("Butte") was all relevant times, until January 3, 2008, the Company's Chief Financial Officer and Director.  Butte signed the materially false and misleading Registration Statement filed with the SEC in connection with the IPO.

13.     Defendant Christopher J. Smith ("Smith") was, at all relevant times, the Company's Chief Operating Officer, Deputy Chief Executive Officer and Director.  Smith signed the materially false and misleading Registration Statement filed with the SEC in connection with the IPO.

14.     Defendant Alison J. Carnwath ("Carnwath") was, at all relevant times, the Company's Non-Executive Chairman of the Board of Directors.  Carnwath signed the materially false and misleading Registration Statement filed with the SEC in connection with the IPO.

15.     Defendant Christopher Bates ("Bates") was, at all relevant times, the Company's Group Controller.  Bates signed the materially false and misleading Registration Statement filed with the SEC in connection with the IPO.

16. Defendant Edward L. Goldberg ("Goldberg") was, at all relevant times, a member of the Company's Board of Directors and was listed in the Registration Statement and Prospectus.

17. Defendant Henri J. Steenkamp ("Steenkamp") was, at all relevant times, the Company's Vice President of Corporate Financial Reporting. Steenkamp signed the materially false and misleading Registration Statement filed with the SEC in connection with the IPO.

18. By reason of their management positions, and/or membership on the Board, and their ability to make public statements in the name of MF, Davis, Butte, Smith, Carnwath, Bates, Goldberg and Steenkamp (collectively, "the Individual Defendants") were and are controlling persons, and had the power and influence to cause (and did cause) MF to engage in the unlawful conduct complained of herein.

19. By reason of their positions with the Company, the Individual Defendants had access to internal Company documents, reports and other information, including the adverse non-public information concerning the Company's IPO, business and risk management system, and attended management and/or Board meetings. The Individual Defendants were responsible for the truthfulness and accuracy of the Company's public filings and press releases described herein.

20. MF, and the Individual Defendants as officers and/or directors of a publicly-held company, had a duty to disseminate promptly truthful and accurate information with respect to the Company and to correct promptly any public filings or statements issued by or on behalf of the Company which had become false or misleading.

**SUBSTANTIVE ALLEGATIONS**

**The IPO**

21.     On July 18, 2007, MF announced that nearly 97.4 million shares of its common stock had been priced at $30.00 per share in the IPO. This generated gross proceeds of approximately $2.92 billion. MF announced that all of the shares representing approximately 80% of the outstanding share capital would be offered by Man which was separating its brokerage business, formerly Man Financial, through the IPO. In connection with the IPO, the Company filed a Registration Statement and a final Prospectus with the SEC (the "Registration Statement/Prospectus"). On July 19, 2007, MF's shares began trading on the NYSE.

22.     The Registration Statement/Prospectus stated that MF had a "comprehensive risk management structure and processes to monitor, evaluate and manage the principal risks we assume in conducting our business." The Registration Statement/Prospectus stated, in relevant part:

> Our risk-management methods focus on monitoring each client's potential exposure at default – that is, our potential exposure to loss in the event that the client defaults – and adjusting that client's margin requirements accordingly in an effort to ensure that their collateral is sufficient to secure their performance obligations on their open positions. This function requires, among other things, that we properly record and verify hundreds of thousands of transactions and events each day, and that we continuously monitor and evaluate the size and nature of our clients' positions and the associated risks.....Our risk-management methods are based on internally developed controls, observed historical market behavior and what we believe to be industry practices.

23.     The Registration Statement/Prospectus further noted a "Disciplined Approach to Risk" and MF's "centralized, hands-on approach." The Registration Statement/Prospectus asserted in relevant part:

> We actively manage risk on a global basis with a centralized, hands-on approach. Our senior executives play a leading role in managing our risk exposure on a day-to-day basis. We monitor our clients' open positions— which represent our

principal risk exposure—and margin levels on a real-time basis, with both sophisticated technical systems as well as continuous oversight from our highly experienced risk managers. Client positions are reviewed and margin levels adjusted both during and at the end of each trading day. We do not rely primarily on conventional value-at-risk methodology to test our clients' exposures, as that methodology attempts to measure risk under relatively "normal" market conditions during a relatively brief period and may not always reflect significant "shock" events that may have occurred over a longer time frame. Rather, we stress-test client positions under hypothetical "worst-case" conditions that reflect actual historical data from periods extending back a decade or longer. We believe this approach enables us to measure risk in light of a broader range of historical experience that includes more extreme conditions.

24. The Registration Statement/Prospectus also discussed the Company's "exposure to market risk" and MF's "active program" of monitoring. The Registration Statement/Prospectus, stated in relevant part:

Overall, we believe that our exposure to market risk is substantially lower than it would be if we took positions for our own account primarily for directional purposes rather than primarily to facilitate client trades on a matched basis and to hedge and manage our corporate assets.

* * *

Employee or introducing broker misconduct could subject us to financial losses or regulatory sanctions and seriously harm our reputation. We have an active program for monitoring and verifying that our employees and introducing brokers comply with specified procedures...

25. Just weeks later, the Company stated on August 14, 2007, that it "prides itself on its rigorous approach to risk management." The Company stated, in relevant part:

As an organization, MF Global prides itself on its rigorous approach to risk management, an essential function that has allowed us to operate successfully for more than 200 years. One of the key components of our risk management is daily assessments of credit and counterparty risk, as well as general market trends.....

MF Global continually takes proactive and prudent action to ensure that its capital, and that of its clients, is held at clearing houses or at the world's largest banking institutions. This approach provides security in all types of market conditions, including the volatility we have seen of late.

MF Global will continue to operate in the best interest of its clients and shareholders in order to protect the capital and integrity of their funds and resources.

26. Certain representations made by defendants contained in ¶¶ 22-25 were materially false and misleading, or omitted to state other facts necessary to make the statements made not misleading, because: (1) the Company's risk management infrastructure including its policies, procedures and systems were deficient; (2) the Company misrepresented that clients open positions and margin levels are monitored on a real time basis with its sophisticated technical system and oversight; (3) the Company's risk management controls were suspended or eliminated to speed up certain trades; (4) the Company eliminated credit and risk analysis, buying power limits and controls which allowed an MF representative to place orders disregarding margin requirements and (5) that, as a result of the foregoing, the Registration Statement/Prospectus was false and misleading at all relevant times.

27. Under applicable SEC rules and regulations, a registration statement is required to disclose known adverse trends in the issuer's business. MF did not disclose in the Registration Statement/Prospectus that its risk management infrastructure was deficient.

28. On February 28, 2008, before the markets opened, MF disclosed via press release that the Company was taking a $141.5 million bad debt provision after one of its day-trading brokers, who was trading in wheat futures "substantially exceeded his authorized trading limit.' The MF broker speculated in wheat futures in his MF personal account, placing orders for about 15,000 to 20,000 futures contracts. On this news, MF's shares closed at $21.19 – down $8.09 a share, representing a nearly 30% collapse.

29. As reported by *The Wall Street Journal* (the "*Journal*") on February 29, 2008, in an article entitled, "Safety Net Breaks Again", the *Journal* noted, in relevant part, that: "MF

Global's risk-management procedures include "buying power controls" that are supposed to flag big or risky trades that might expose the firm to potential losses." The *Journal* continued to note: "But those internal controls were sometimes turned off, at the Memphis office and possibly other locations in order to speed trades. The surge in commodities-trading volume has created pressure on brokerage firms to keep up."

30. Following MF's disclosure of the $141.5 million bad debt provision, several downgrades were issued by research firms and rating agencies including Moody's Investing Service ("Moody's") citing MF's risk management controls. Moody's downgraded the long-term issuer rating of the Company noting that the failure of MF to have sufficient systems in place to block such trades "represents a serious breakdown of risk controls." Fitch Ratings placed MF's credit ratings on review with negative implications citing that MF's broker's action and subsequent loss "questions the robustness of risk measurement" and represents "a substantial portion" of the Company's profit. MF was also downgraded by Lehman Brothers, Credit Suisse and UBS.

31. On February 29, 2008, MF's share reached an intraday low of $14.27 a share and closed at $17.55 a share, down an additional $3.64 a share from the previous trading day's closing price of $21.19. This also represented a dramatic collapse of nearly $12 a share on unusually high trading volume over just two trading days. Over $1 billion in MF's market capitalization had been erased.

32. Finally on March 5, 2008, the *Journal* reported that federal law-enforcement authorities, including the U.S. Attorney's office for the Northern District of Illinois were investigating the future's trades made by MF's broker. It was reported that the CME Group Inc. and Commodity Future Trading Commission were also looking into the matter.

## **CLASS ACTION ALLEGATIONS**

33. Plaintiff brings this action as a class action pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3) on behalf of a class consisting of all persons and entities who purchased or acquired MF's publicly-traded common stock pursuant or traceable to the IPO through and including February 28, 2008 and who suffered damages as a result of the defendants' improper conduct (the "Class"). Excluded are defendants, any entity in which defendants have a controlling interest or is a parent or subsidiary of or is controlled by the Company, and the officers, directors, employees, affiliates, legal representatives, heirs, predecessors, successors and assigns of defendants.

34. The members of the Class are so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to plaintiff at this time and can only be ascertained through appropriate discovery, plaintiff believes there are, at minimum, thousands of members of the Class who purchased MF's common stock pursuant or traceable to the IPO.

35. Questions of law and fact are common to all members of the Class and predominate over any questions affecting solely individual members of the Class. Among the questions of law and fact common to the Class are:

    a)    whether the federal securities laws were violated by defendants' acts as alleged herein;

    b)    whether the Company issued false and misleading statements in connection with the IPO; and

    c)    whether plaintiff and the other members of the Class have suffered damages and, if so, in what amount;

36. Plaintiff's claims are typical of the claims of the members of the Class. Plaintiff and the other members of the Class each sustained damages arising out of the defendants' wrongful conduct in violation of federal law as complained of herein.

37. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class actions and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

38. A class action is superior to other available methods for the fair and efficient adjudication of the controversy because joinder of all members of the Class is impracticable. Furthermore, because the damages suffered by the individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for the Class members individually to redress the wrongs done to them. Plaintiff anticipates no unusual difficulties in the management of this action as a class action.

## NO SAFE HARBOR

39. The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this complaint. Many of the specific statements pleaded herein were not identified as "forward-looking statements" when made. To the extent there were any forward-looking statements, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements.

## COUNT I
### VIOLATIONS OF SECTION 11 OF THE SECURITIES ACT AGAINST ALL DEFENDANTS

40. Plaintiff repeats and reiterates each and every allegation contained above, as if fully set forth herein.

41.   This claim is brought by plaintiff, on behalf of herself and other members of the Class, who purchased MF's common stock pursuant to the Registration Statement/Prospectus. Each Class member acquired their shares pursuant to the Registration Statement/Prospectus.

42.   Defendants are liable under this claim because the Registration Statement/Prospectus contained untrue statements or omitted material facts required to be stated or necessary to make the statements not misleading.

43.   MF is the issuer of the stock sold via the Registration Statement/Prospectus. As issuer of the stock, the Company is strictly liable to plaintiff and the Class for the material misstatements and omissions therein.

44.   The Individual Defendants, as signatories to the Registration Statement/Prospectus, as directors, and/or officers and controlling persons of the issuer, owed to the holders of the stock obtained through the Registration Statement/Prospectus the duty to make a reasonable and diligent investigation of the statements contained in the Registration Statement/Prospectus at the time they become effective to ensure that such statements were true and correct and that there was no omission of material facts required to be stated in order to make the statements contained therein not misleading. Defendants failed to exercise reasonable care in connection with issuing the Registration Statement/Prospectus for the IPO. As such, defendants are liable to the Class.

45.   None of the defendants made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Registration Statement/Prospectus were true or that there was no omission of material facts necessary to make the statements made therein not misleading.

46.     Defendants issued and disseminated, caused to be issued and disseminated, and participated in the issuance and dissemination of, material misstatements to the investing public which were contained in the Registration Statement/Prospectus, which misrepresented or failed to disclosed, *inter alia*, the facts set forth above.  By reason of the conduct herein alleged, each defendant violated and/or controlled a person who violated Section 11 of the Securities Act.

47.     At the time they obtained their shares of MF, the plaintiff and members of the Class did so without knowledge of the facts concerning the misstatements or omissions alleged herein.

48.     This action is brought within one year after discovery of the untrue statements and omissions in the Registration Statement/Prospectus and within three years of the effective date of the Registration Statement/Prospectus.

49.     By virtue of the foregoing, plaintiff and the other members of the class are entitled to damages under Section 11 as measured by the provisions of Section 11(e), from defendants and each of them, jointly and severally.

## COUNT II

### VIOLATIONS OF SECTION 12(a)(2) OF THE SECURITIES ACT AGAINST ALL DEFENDANTS

50.     Plaintiff repeats and reiterates each and every allegation contained above, as if fully set forth herein.

51.     This Count is brought pursuant to Section 12(a)(2) of the Securities Act on behalf of the Class, against all defendants.

52.     Defendants were sellers and offerors and/or solicitors of purchasers of the shares offered pursuant to the Registration Statement/Prospectus.

53. The Registration Statement/Prospectus contained untrue statements of material facts, omitted to state other facts necessary to make the statements made not misleading and concealed and failed to disclose material facts. The Individual Defendants' actions of solicitation included participating in the preparation and dissemination of the false and misleading Registration Statement/Prospectus.

54. Defendants owed to the purchasers of MF shares, including plaintiff and other class members, the duty to make a reasonable and diligent investigation of the statements contained in the IPO materials, including the Registration Statement/Prospectus contained therein, to ensure that such statements were true and that there was no omission to state a material fact required to be stated in order to make the statements contained therein not misleading. Defendants knew of, or in the exercise of reasonable care should have known of, the misstatements and omissions contained in IPO materials as set forth above.

55. Plaintiff did not know, or in the exercise of reasonable diligence could have known, of the untruths and omissions contained in the Registration Statement/Prospectus.

56. Plaintiff, individually and representatively, hereby offers to tender to defendants those shares which plaintiff and the other Class members continue to own, on behalf of all members of the Class who continue to own such common stock, in return for the consideration paid for those securities together with interest therein. Class members who have sold their MF shares are entitled to rescissory damages.

## COUNT III
### VIOLATIONS OF SECTION 15 OF THE SECURITIES ACT
### AGAINST THE INDIVIDUAL DEFENDANTS

57. Plaintiff repeats and realleges each and every allegation contained in complaint as if fully set forth herein.

58.    This count is asserted against the Individual Defendants and is based upon Section 15 of the Securities Act.

59.    The Individual Defendants, by virtue of their stock ownership, offices, directorships and specific acts were, at the time of the wrongs alleged herein and as set forth herein, controlling persons of MF. The Individual Defendants had the power and influence and exercised the same to cause MF to engage in the acts described herein.

60.    By virtue of the misconduct alleged herein, and the primary violation of Section 11 of the Securities Act, the Individual Defendants are liable are liable as control persons to the plaintiff and the Class for damages.

## **PRAYER FOR RELIEF**

WHEREFORE, plaintiff, on her own behalf and on behalf of the Class, prays for judgment as follows:

(a)    Declaring this action to be a class action pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure on behalf of the Class defined herein;

(b)    Awarding plaintiff and the other members of the Class damages in an amount that may be proven at trial, together with interest thereon;

(c)    Awarding plaintiff and other class members rescission on their Section 12(a)(2) claim;

(d)    Awarding plaintiff and the members of the Class pre-judgment and post-judgment interest, as well as their reasonable attorneys' and experts' witness fees and other costs; and

(e)    Such other relief as this Court deems appropriate.

## JURY DEMAND

Plaintiff demands a trial by Jury.

Dated: March 17, 2008

Respectfully submitted,

ZWERLING, SCHACHTER &
ZWERLING, LLP

By: _____
Richard A. Spears (RS8872)
Shaye J. Fuchs (SF9412)
41 Madison Avenue – 32nd Floor
New York, NY 10010
Phone: (212) 223-3900
Facsimile: (212) 371-5969


Michael E. Criden
**CRIDEN & LOVE, P.A.**
7301 S.W. 57th Court, Ste. 515
South Miami, FL 33143
Phone: (305) 357-9018
Facsimile: (305) 357-9050


*Attorneys for Plaintiff*

## CERTIFICATION OF NANETTE KATZ

Nanette Katz, ("Plaintiff"), declares that:

1. Plaintiff has reviewed the complaint regarding MF Global, Ltd. and has authorized Zwerling, Schachter & Zwerling, LLP to file it on her behalf.

2. Plaintiff did not purchase any security, which is the subject of this action, at the direction of counsel for Plaintiff or in order to participate in this private action.

3. Plaintiff is willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.

4. Plaintiff's transactions in the security that is the subject of this action during the class period are as follows: purchased 200 shares of common stock at $30 per share on the July 19, 2007 IPO.

5. During the three years prior to the date of this Certification, Plaintiff has sought to serve or served as a representative party for the following class actions filed under the federal securities laws: *In re Lazard Ltd. Sec Litig.*, 05-cv-5630 (VM) SDNY.

6. Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond her *pro rata* share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the Court.

Plaintiff, Nanette Katz, declares under penalty of perjury that the foregoing is true and correct.

March 13, 2008

*Nanette Katz*
Nanette Katz